## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | |
|---|---|
| KIMBERLY "KIM" COZZENS, LUCY PINDER, MASHA "MALU" LUND, and JOANNA KRUPA, <br><br>       Plaintiffs, <br><br>     - against - <br><br> INTERNATIONAL KDC, INC d/b/a THE TROPHY CLUB FLORENCE; and HIGH FIVE MANAGEMENT GROUP, INC d/b/a THE TROPHY CLUB GREENVILLE. <br><br>       Defendants. | Case No. |

    Plaintiffs Kimberly "Kim" Cozzens, Lucy Pinder, Masha "Malu" Lund, and Joanna Krupa, (collectively, "Plaintiffs"), file this Complaint against International KDC, Inc. d/b/a The Trophy Club Florence; and High Five Management Group, Inc d/b/a The Trophy Club Greenville (collectively, "Defendants") respectfully allege as follows:

### **<u>BACKGROUND</u>**

    1.   This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip clubs, The Trophy Club Florence located in Florence, South Carolina and The Trophy Club Greenville located in Greenville, South Carolina ("Trophy" or the "Club").

    2.   As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading

representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of publicity relating to Defendants' misappropriation of each Plaintiffs' image and likeness; c) violation of South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*; d) defamation; and e) various common law torts, including conversion.

3.     In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.     This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.     Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.     According to publicly available records, defendant International KDC, Inc is a corporation formed under the laws of the state of South Carolina, with its principal place of business located at 1617 W. Lucas Street Florence, South Carolina. International KDC, Inc operates The Trophy Club Florence which is located at 1617 W. Lucas Street Florence, South Carolina.

8.     According to publicly available records, defendant High Five Management Group, Inc is a corporation formed under the laws of the state of South Carolina, with its principal place of business located at 450 Airport Road, Greenville, South Carolina. High Five Management

Group, Inc operates The Trophy Club Greenville which is located at 450 Airport Road, Greenville, South Carolina.

9.    Venue is proper in the United States District Court District of South Carolina because Defendants' principal place of business is located in Florence and Greenville, South Carolina.

10.    A significant portion of the alleged causes of action arose and accrued in Florence and Greenville, South Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Florence and Greenville, South Carolina.

## PARTIES

*Plaintiffs*

11.    Plaintiff Kimberly "Kim" Cozzens ("Cozzens") is a well-known professional model, and a resident of Los Angeles County, California.

12.    Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of England.

13.    Plaintiff Masha "Malu" Lund ("Lund") is a well-known professional model, and a resident of New York County, New York.

14.    Plaintiff Joanna Krupa ("Krupa") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

15.    Defendant High Five Management Group, Inc  is a corporation formed under the laws of the state of South Carolina and registered to conduct business in South Carolina.  At all times relevant to this action, High Five Management Group, Inc operated The Trophy Club

Greenville in Greenville, South Carolina.

16.     Service of process may be perfected upon Defendant High Five Management Group, Inc by serving the registered agent for service of process, Registered Agents, Inc, who can be located at 6650 River Avenue, Ste 100 Charleston, South Carolina 29405.

17.     Defendant International KDC, Inc is a corporation formed under the laws of the state of South Carolina and registered to conduct business in South Carolina.  At all times relevant to this action, International KDC, Inc operated The Trophy Club Florence in Florence, South Carolina.

18.     Service of process may be perfected upon Defendant International KDC, Inc by serving the registered agent for service of process, Registered Agents, Inc, who can be located at 6650 River Avenue, Ste 100 Charleston, South Carolina 29405.

## **FACTUAL ALLEGATIONS**

19.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

20.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

21.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

22.    In the case of each Plaintiff, this apparent claim was false.

23.    Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

24.    No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

25.    Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

26.    Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

27.    That we know of, Cozzens is depicted in the photo in Exhibit "A" to promote Trophy on its Facebook page. This Image was intentionally altered to make it appear that Cozzens was either a stripper working at Trophy, that she endorsed Trophy, or that she was otherwise associated or affiliated with Trophy.

28.    Cozzens has never been employed at Trophy, has never been hired to endorse Trophy, has never been otherwise associated or affiliated with Trophy, has received no

remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.    Pinder is, and at all times relevant to this action was, an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in publications such as *FHM, Nuts, Loaded, The Daily Star,* and hundreds of others. Pinder has appeared on *FHM's* list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in *Nuts*, entitled "The Truth About Women" and appeared on the final edition of the *Nuts* magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others, and on large national and international advertising campaigns. Pinder has an established an acting career with many TV appearances and Film credits. She has appeared on shows such as *I'm Famous and Frightened*, *Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon,* and *Team and Bo!* in the USA. Pinder was also a contestant on *Celebrity Big Brother*. Pinder starred in films such as *The Seventeenth Kind, Age of Kill,* and *Warrior Savitri*. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with *Help for Heroes* appearing in the *Hots Shots* fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and Twitter.

30.    That we know of, Pinder is depicted in the photo in Exhibit "B" to promote Trophy on its Facebook page. This Image was intentionally altered to make it appear that Pinder was either

a stripper working at Trophy, that she endorsed Trophy, or that she was otherwise associated or affiliated with Trophy.

31.     Pinder has never been employed at Trophy, has never been hired to endorse Trophy, has never been otherwise associated or affiliated with Trophy, has received no remuneration for Defendant's unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

32.     Lund is a famous Danish/Russian model, actress, and designer. Lund started modeling when she was a baby in TV commercials for baby food. After finishing business college, she was sponsored in the United States to model. She modeled in major ads for Rockstar Energy Drinks billboards that were displayed in 20 cities throughout the U.S. Lund has graced the covers of FHM, Maxim, Ralph, and People Magazine and been published in *GQ, Mens Health, Esquire, Sports Illustrated* and celebrity spread for *Playboy* magazine and was named one of the "Sexiest Women in the World" by FHM. She has had roles in The Pick of Destiny with Jack Black and Tenacious D, and Epic Movie with Carmen Electra. Lund was featured in music videos for Eminem, Lady Gaga, and many other big names. She also was a spokesmodel for several brands including, Dreamgirl Lingerie clothing company for eight years, and was featured on more billboards for 138 Water Company on Sunset Drive in Los Angeles and for Nialaya on Robertson Blvd. in LA. In 2010, she starred in a popular Danish reality TV show about career women from Denmark "living the dream" in Los Angeles, called Danske Hollywood Fruer. Lund has studied fashion, art and interior design as well as working on her own pet clothing line HollywoodPetCouture. Lund is also an interior decorator, blogger, and endorser for several beauty companies.

33.     That we know of, Lund is depicted in the photo in Exhibit "C" to promote Trophy

on its Facebook page. This Image was intentionally altered to make it appear that Lund was either a stripper working at Trophy, that she endorsed Trophy, or that she was otherwise associated or affiliated with Trophy.

34.    Lund has never been employed at Trophy, has never been hired to endorse Trophy, has never been otherwise associated or affiliated with Trophy, has received no remuneration for Defendant's unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

35.    Krupa is, and at all times relevant to this action was, a Polish American model, actress, and dancer. She was named the "Sexiest Swimsuit Model in the World" and has appeared on the cover of magazines such as *Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze, Maxim*, and twice for *Playboy*. Krupa has also graced the covers of South African *GQ*, and the Polish editions of *Cosmopolitan, InStyle, Glamour*, and *Grazia*. Krupa was voted "Model of the Year" in Maxim's 2004-2005 German edition and was ranked #55 in Maxim's "Hot 100" 2011 edition and was voted "Model of the Year" in Maxim's 2004-2005 German edition. She has appeared on the cover of Playboy magazine twice, modeled for PETA, and founded an animal rescue group, Angels for Animal Rescue, with her friend Gabi Gutierrez.  In addition, Krupa has appeared in "The Underground Comedy Movie" (1999) (2010 re-issue), "Planet of the Apes" (2001), "The Man Show" (2002–2003), the action film "Max Havoc: Curse of the Dragon," (2004), "Las Vegas" episode "Degas Away with It" (2004), "CSI: Crime Scene Investigation" episode "Kiss-Kiss, Bye-Bye" (2006), "The Dog Problem" (2006), "Scary Movie 4" (2006), "Ripple Effect" (2007), "Skinner Box" (2007),the television show "Superstars" (June 2009), and in Season 9 of "Dancing with the Stars." (2009), "Szymon Majewski Show" (Polish TV talk show) (2010), Krupa was a cast member for the reality TV show "The Real Housewives of Miami"

(2012–2013), "Ridiculousness" (2014), and has been the host and head judge in Poland's "Next Top Model" since 2010.

36.     That we know of, Krupa is depicted in the photo in Exhibit "D" to promote Trophy on its Facebook page. This Image was intentionally altered to make it appear that Krupa was either a stripper working at Trophy, that she endorsed Trophy, or that she was otherwise associated or affiliated with Trophy.

37.     Krupa has never been employed at Trophy, has never been hired to endorse Trophy, has never been otherwise associated or affiliated with Trophy, has received no remuneration for Defendant's unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

38.     Defendants operate (or operated, during the relevant time period,) Trophy, where they are (or were) engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

39.     In furtherance of its promotion their promotion of Trophy, Defendants own, operate, and control Trophy's social media accounts, including its Facebook, Twitter, and Instagram accounts.

40.     Defendants used Trophy's Facebook, Twitter, and Instagram accounts to promote Trophy, and to attract patrons.

41.     Defendants did this for their own commercial and financial benefit.

42.     Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Trophy, endorsed Trophy, or was otherwise associated

or affiliated with Trophy.

43.    Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Trophy to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

44.    Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Trophy, and at no point have any of the Plaintiffs ever endorsed Trophy or otherwise been affiliated or associated with Trophy.

45.    All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

46.    Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

47.    Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

48.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

49.    The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known

in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

50.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

51.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Trophy.

52.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

53.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Trophy.

54.     At no point was any Plaintiff ever contacted by any Defendants, or any representative of any Defendants, to request the use of any of Plaintiffs' Images.

55.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

56.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Trophy website, Twitter, Facebook, or Instagram accounts.

57.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

<u>**FIRST CAUSE OF ACTION**</u>
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

58.     The advertisements at issue in this action were false and misleading under 15

U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or affiliated with Trophy, nor had they agreed to appear in Trophy's advertisements.

59.  Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

60.  Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Trophy.

61.  Defendants' publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

62.  Even though Defendants were at all times aware that the Plaintiffs neither worked at nor endorsed Trophy, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiff's employment at or affiliation with Trophy.

63.  Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Trophy.

64.  Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Trophy, and the goods and services provided by Trophy.

65.  Defendants' unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)**

66.  Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with Trophy, or worked at, sponsored, or approved of Trophy's goods, services or commercial activities.

- 12 -

67.    This was done to promote and attract clientele to Trophy, and thereby generate revenue for the Defendant, for Defendant's commercial benefit.

68.    Even though Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Trophy, nor worked at, sponsored, or approved of Trophy's goods, services or commercial activities, Defendant nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Trophy.

69.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at Trophy.

70.    Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of Trophy, and the goods and services provided by Trophy.

71.    Defendants' unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### (Common Law Right of Publicity – Misappropriation of Likeness)

72.    Defendants have appropriated each Plaintiff's likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

73.    Defendants misappropriated Plaintiffs' likenesses by publishing their Images on Trophy's website or related social media accounts as part of Defendants' advertising campaign.

74.    Trophy's website and social media accounts were designed to advertise and attract business to Trophy and generate revenue for Defendants.

75.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently

undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

76.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

77.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

78.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Trophy.

79.    At no point did any Defendants ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

80.    Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

81.    At no point did Defendant ever compensate Plaintiffs for its unauthorized use of their Images.

82.    Plaintiffs have been damaged in amounts to be proved at trial.

## FOURTH CAUSE OF ACTION
### (Violation of South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*)

83.    Defendants operated Trophy's website and social media accounts in order to promote Trophy, to attract clientele thereto, and to thereby generate revenue for Defendants.

84.    As such, Defendants' operation of the website and social media accounts, and their

- 14 -

publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of South Carolina.

85.    Defendants published Plaintiffs' Images on Trophy's website and social media accounts to create the false impression that Plaintiffs were either strippers working at Trophy, endorsed Trophy, or were otherwise affiliated, associated, or connected with Trophy.

86.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Trophy.

87.    Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of South Carolina.

88.    Defendants advertising practices offends the public policy of South Carolina insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendants commercial benefit.

89.    Defendants advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Trophy.

90.    Defendants' advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with, Trophy.

91.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

92.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs'

Images on their Club's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

93.     As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
### (Defamation)

94.     As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

95.     Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by Trophy, that they endorsed Trophy, or that they had some affiliation with Trophy.

96.     None of these representations were true.

97.     In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at Trophy or endorsed Trophy.

98.     Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Trophy, had no affiliation with Trophy, had not consented to the use of their Images, and had not been compensated for the use of their Images.

99.     In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Trophy, had no affiliation with Trophy, had not consented to the use of their Images, and had not been compensated for the use of their Images.

100. Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

101. Defendants' publication of Plaintiffs' Images constitutes defamation under South Carolina law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

102. Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under South Carolina law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

103. This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

104. Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under South Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

105. Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SIXTH CAUSE OF ACTION
**(Negligence and *Respondeat Superior*)**

106. Plaintiffs are further informed and believe and hereon allege that Defendants

maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

107.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

108.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

109.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

110.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

111.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and South Carolina law, were not violated.  Defendant breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

112.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when

their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

113.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

114.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

115.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

116.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

117.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote Trophy to the general public and potential clientele.

118.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Trophy or endorsed Trophy.

119.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

120.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

121.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

122.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

123.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(Quantum Meruit)**

124.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

125.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

126.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendant have not compensated Plaintiffs.

127.    Plaintiff is therefore entitled to reasonable compensation for Trophy's unauthorized use of their Images.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through ninth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote Trophy;

(c)  For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(e)  For such other and further relief as the Court may deem just and proper.

Respectfully,

/s/ Joshua E. Slavin

| | |
|---|---|
| John V. Golaszewski | Joshua E. Slavin |
| New York Bar No. 4121091 | The Law Offices of Joshua E. Slavin |
| *Pro Hac Vice Application Pending* | PO Box 762 |
| **THE CASAS LAW FIRM, P.C.** | Mount Pleasant, SC 29465 |
| 1740 Broadway, 15th Floor | P: 843-619-7338 |
| New York, New York 10019 | F: 888-246-8914 |
| (646) 872-3178 | josh@attorneycarolina.com |
| john@casaslawfirm.com | Fed. Bar No. 12602 |

Attorneys for Plaintiffs

August 2, 2022
Mount Pleasant, SC